SOUTHWESTERN SURETY INS. CO. et al. v. VICKSTROM et al. (No. 7549.)

(Court of Civil Appeals of Texas. Galveston. March 20, 1918. Rehearing Denied March 28, 1918.)

1. ALIENS ⬦⟩14, 16—PROPERTY RIGHTS — STATUTE.

Acts 5th Leg. c. 70, carried forward into Vernon's Sayles' Ann. Civ. St. 1914, art. 15, providing that no alien shall acquire title to or own any land in the state except as otherwise provided, but that they shall have such rights as to personal property as are accorded citizens of the United States by the laws of the nation to which the alien shall belong, or by treaties of such nation with the United States, except as the same may be affected by the act and the general laws of the state, is cumulative, and not. restrictive of the common and general laws of the state, permitting aliens to inherit personal property and to sue therefor.

2. ALIENS ⬦⟩10—PROPERTY RIGHTS—STATUTE.

Under such statute the provisions of the state laws must first be looked to in determining the rights which would, in any event, accrue to an alien, regardless of whether or not his own country grants reciprocal rights to citizens, and if it did and accorded more, the state laws, in the absence of restrictive provisions, express or implied, would ipso facto expand to comprehend the additional benefits allowed by that of the alien's domicile.

3. MASTER AND SERVANT ⬦⟩361 — WORKMEN'S COMPENSATION ACT—RIGHT OF NONRESIDENT ALIENS.

Under the Workmen's Compensation Act (Acts 33d Leg. c. 179 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz]), not excluding nonresident aliens from recovering the benefits thereby provided, and under Acts 5th Leg. c. 70, carried forward into Vernon's Sayles' Ann. Civ. St. 1914, art. 15, giving aliens such rights to personal property as are accorded citizens of the United States by the nation to which the alien may belong, or by treaties, etc., except as the same may be affected by the general laws of the state, nonresident aliens are entitled to recover the benefits provided by the Workmen's Compensation Act.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Suit under the Workmen's Compensation Act by Gustava Vickstrom and another, as the surviving mother and sister of Peter Vickstrom, deceased, to obtain compensation for his death, opposed by C. Flanagan & Sons, employer, and by the Southwestern Surety Insurance Company, successor, as insurer. Demurrer to the petition overruled, and judgment for plaintiffs, and both surety companies appeal. Affirmed.

Andrews, Streetman, Burns & Logue, of Houston, for appellants. H. C. Hughes, of Galveston, for appellees.

GRAVES, J. This case presents but a single question, and, very broadly stated, that is: Are nonresident aliens entitled to recover the benefits provided by the Texas Workman's Compensation Act?

Peter Vickstrom suffered accidental injuries while in the course of his employment by C. Flanagan & Sons, at Port Arthur, Tex., from which he later died. His employers at the time were subscribers, and carried an insurance policy for the benefit of their employés under the terms of the act, issued by appellant Southwestern Surety Insurance Company; this company subsequently quit business, all its assets and liabilities being taken over by its coappellant, Southern Surety Company. Compensation up to the time of his death, aggregating $145.20, was paid Vickstrom. After his death, liability to pay any further compensation was denied, primarily upon the ground that the claimants were nonresident aliens, and were neither beneficiaries under the Texas Compensation Act, nor otherwise entitled under the laws of Texas to receive its benefits. These claimants were appellees, Gustava and Irene Vickstrom, his mother and sister, respectively, who then sued appellants in the Tenth district court, at Galveston, setting up the facts stated, and claiming the compensation prescribed in the act as the legal beneficiaries of the deceased, Peter Vickstrom, their petition showing upon its face that they were residents of the Grand Duchy of Finland, Russia. The appellants first replied by general demurrer, which being overruled, they then specially alleged that the plaintiffs were nonresident aliens, and that, being citizens of a foreign country and residing therein, they were not beneficiaries, and not entitled to the compensation, because citizens of the United States were not accorded like privileges in their country. The trial court, after sustaining a demurrer to this last-mentioned allegation and specifically ordering that no proof of it be admitted or considered for any purpose, heard the case, and rendered

judgment for the appellees against both surety companies for $726 and interest, reciting that it was the aggregate compensation to them under the terms of the statute in question at $13.20 per week, or 60 per cent. of his average weekly wages, arising by reason of Peter Vickstrom's death, and accruing from the date thereof to the date of the judgment, and providing that any right to sue for such further sums as might thereafter become due should not be prejudiced thereby. From that judgment both surety companies have appealed.

No complaint is made here that one of the appellees, being a sister of the deceased employé was not as such a legal beneficiary under the Compensation Act, but, as first stated, the sole contention presented in different forms under the various assignments is that they could not recover on account of being nonresident aliens. We accordingly treat all the assignments as one, and determine the single question presented. The position of appellants is that, appellees having admitted themselves to be nonresident aliens, since the allegation that the laws of their home country, the Duchy of Finland, Russia, did not accord to residents of the United States and of Texas the same rights in personal property as appellees claimed in this suit must be taken as true, under the court's action in sustaining the demurrer to it, appellees were concluded as a matter of law, could not become legal beneficiaries under the Compensation Act, and were also barred by the terms of our statute relating to aliens. Article 15, Revised Statutes of 1911. The trial court's conclusion of law upon the issue thus raised was as follows:

"The fact that the plaintiffs in this case are aliens constitutes no bar to their recovery, since neither under the Workman's Compensation Act, nor under the general law of this state, are they denied the right to inherit. The cause or causes of action arising in their favor under the Workman's Compensation Act constitute personal property, and both under this act and the common law and general laws of this state aliens may inherit same regardless of whether similar rights are accorded citizens of this country in the country or countries of such aliens. Acts of 1913, page 429, § 8, part 1; article 5246kk, Vernon's Sayles' Civil Statutes 1914; article 2461, Vernon's Sayles' Civil Statutes 1914; Franco-Texas Land Co. v. Chaptive (Sup.) 3 S. W. 31; McGovern v. Railway Co., 235 U. S. 389, 35 Sup. Ct. 127, 59 L. Ed. 283; Caliendo's Case, 219 Mass. 498, 107 N. E. 370; Vujic v. Youngstown Sheet & Tube Co. (D. C.) 220 Fed. 290; State ex rel. Crookston Lbr. Co. v. District Court, 131 Minn. 27, 154 N. W. 509. Where there is no provision in the Compensation Act denying benefit of such to aliens, resident, or nonresident, such aliens stand upon the same footing as citizens of this state, and are entitled to full benefits of such act. Bradberry on Workman's Compensation, vol. 1, p. 582; Bonthron v. Light & Fuel Co., 8 Ariz. 129, 71 Pac. 941, 61 L. R. A. 563, specially in point; Anustasakas v. Contracting Co., 51 Wash. 119, 98 Pac. 93, 21 L. R. A. (N. S.) 267, 130 Am. St. Rep. 1089; Romano v. Brick & Pipe Co., 125 Iowa, 591, 101 N. W. 437, 68 L. R. A. 132, 106 Am. St. Rep. 323, 2 Ann. Cas. 678. The

plea of alienage is not favored in law. Anustasakas v. Contracting Co., 51 Wash. 119, 98 Pac. 93, 21 L. R. A. (N. S.) 267, 130 Am. St. Rep. 1089, 8 Neg. & Com. Cas. 67; Hanrick v. Hanrick, 61 Tex. 604, 605. Article 15 of Vernon's Sayles' Civil Statutes, relating to aliens, has no application whatever to the Workman's Compensation Act, and in no event can be construed to limit, abridge, or deny the rights of aliens to the benefit and the right to inherit under said Compensation Act."

Without intending to approve every expression therein, we think this general conclusion of the court below was correct. Moreover, since the policy of our general laws has undoubtedly been not to discriminate against nonresident aliens, in relation to personal rights, and since our compensation act itself does not expressly disqualify them, it seems to us the only pertinent inquiry left is whether or not their rights as such are abridged by the provisions of article 15, Revised Statutes of Texas. The present form of that article is as follows:

"Article 15. *Alien Ownership of Lands Inhibited.* No alien or person who is not a citizen of the United States shall acquire title to or own any lands in the state of Texas, except as hereinafter provided; but he shall have and enjoy in the state of Texas such rights as to personal property as are or shall be accorded to citizens of the United States by the laws of the nation to which such alien shall belong, or by the treaties of such nation with the United States, except as the same may be affected by the provisions of this title and the general laws of the state."

Appellees maintain that this exact language has never been enacted by the Legislature, but was without authority added by the codifiers in 1895; that, since the act of 1891 was held unconstitutional in Gunter v. Mortgage Co., 82 Tex. 496, 17 S. W. 840, the rights of aliens in personal property were thus left dependent either upon the statute appearing in the codification of 1879, or upon the act of 1854. The trial court seems to have partly adopted this view, and to have concluded that, as the codification of 1879 made no specific mention of personal property, the act of 1854 really constitutes the present law upon the subject. While the latter statute contains practically the same language with reference to personal property as the present one, we do not regard the question of whether the one or the other is now the official act of the Legislature as material here, and do not decide it, because we think the rule of construction would be the same in either contingency.

[1, 2] Appellants insist, however, that the language of article 15 plainly limits and restricts the rights of nonresident aliens touching personal property in Texas to such only as are accorded our citizens by the laws of the alien's country; but we are unable to agree with them, and here quote with approval this further portion of the trial court's conclusions of law:

"The act of 1854, page 98, which purports to be carried forward in article 15, Vernon's Sayles' Civ. Stat., appears to be the only enactment in this state with reference to the

rights of aliens as to personal property. But this statute can have no possible application, because the Supreme Court of this state has held that the act of 1854 is cumulative and not restrictive in its operations. Under the common law and general laws as well of this state, aliens are and have always been entitled to inherit personal property in this state and to sue for same. Franco-Texas Land Co. v. Chaptive, 3 S. W. 31; 2 Corpus Juris, 1069. With full knowledge of this statute relating to rights of aliens, the Supreme Court in the Chaptive Case decided in December, 1886, there was no question of the right of aliens to hold and sue for personal property in this state. As stated by the Supreme Court in Hanrick v. Hanrick, 61 Tex. 604: 'If the Legislature had intended to adopt an entirely new and exclusive policy abrogating that which had prevailed from the organization of the Republic, it seems that we might as well anticipate that such intent would be expressed in plain and unmistakable terms. How very appropriately that intent might have been expressed by simply adding to the second section, "and in no other manner," or other equivalent expression.' But there is no such expression used in the act as would necessarily imply that the intention was to make it exclusive and restrictive. But for another reason said statute is not applicable; because. by the very terms of article 15, Vernon's Sayles' Civ. Stat., the operation of such article is expressly denied when affected by the general laws of the state. The general law of the state regulating and governing the payment of compensation under the Workman's Compensation Act contains no limitation or provision whatever denying to aliens the benefits of such act. It is, moreover, a matter of common knowledge and a part of the judicial history of the state that the right of aliens, resident and nonresident, to inherit under the statutes of descent and distribution, as well as those regulating wills. has been recognized and upheld as to personal property, without question."

In construing this statute of 1854, which, as we have stated, did not materially differ in its provisions concerning personal property from the present article 15, the Supreme Court in the Hanrick Case, after so declaring it to be an enlarging and not a restricting act, further declared that, under it, aliens would have such rights in real property as our laws allowed, unless the laws of their own country were more liberal, in which latter event our statutes would yield to those of the foreign country. Hanrick v. Hanrick, 61 Tex. 596. In other words, the provisions of our law must first be looked to in determining the rights which would in any event accrue to an alien, regardless of whether or not his own country granted reciprocal ones to our citizens; but if it did, and then went further and accorded more than we had first provided for, our law, in the absence of restrictive provisions, express or implied, would ipso facto become expanded until it comprehended the additional benefits allowed by that of the foreigner's domicile.

[3] These considerations apply, with equal force, we think, to the provisions of present article 15, concerning the rights of aliens as to personal property. We cannot think with the surety companies here that our lawmakers intended for these rights to be entirely controlled by the law of the aliens' domicile, but rather that our own should dominate in the manner just stated. That construction would seem to us much more consonant with the progressive and liberalized spirit of the times, and would leave no room for such injustice as might follow the adoption of the rule contended for by appellants. Under their view, an insurance company might first insure the employés of a subscriber against accidental injuries suffered during the course of their employment in the unrestricted manner prescribed in our Compensation Act, receive and accept the profits of that insurance in the premium paid it therefor, and then refuse payment on the policy because the law of Russia, which happened to be the home of the assured's beneficiaries, did not have a compensation statute, or other legal provision, under which citizens of Texas could recover like benefits.

While that elusive something termed "the legislative intent" may be somewhat like Eugene Sue's Wandering Jew, whose vanishing coattails are often seen turning corners just ahead, but whom you never meet face to face, still we are unwilling to wholly abandon the effort to attain it, as we feel would be the result here of accepting the construction contended for by appellants.

It is apparent from the conclusions stated that all assignments must be overruled, and the judgment below affirmed, and that order has been entered.

Affirmed.